1

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   GREG BRAUN, Chapter 11 Trustee,              CASE NO. CV-F-04-5474 LJO

11                    Plaintiffs,               **ORDER ON PLAINTIFF'S MOTION**
                                                **FOR PARTIAL SUMMARY JUDGMENT**
12          vs.                                 (Doc. 45)

13   THOMAS O'BRIEN, et al.,

14                    Defendants.
     _____/

15

16          Pursuant to a notice filed on November 18, 2005, Plaintiff Greg Braun, as Plan Agent and Former

17   Chapter 11 Trustee of Coast Grain Company, renews his motion for partial summary judgment as to his

18   Fifth and Sixth Claims for relief against defendant Dairy Feed Group. Defendant Dairy Feed Group filed

19   an opposition on December 2, 2005. Greg Braun filed a reply on December 9, 2005.

20          Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court

21   finds that the matter may be submitted on the pleadings without oral argument pursuant to Local Rule

22   78-230(h).

23                    **FACTUAL AND PROCEDURAL BACKGROUND**

24   **A.     Overview**

25          A Chapter 11 involuntary petition was filed against Coast Grain Company on October 17, 2001.

26   Coast Grain's Third Amended Chapter 11 Plan was approved by the Bankruptcy court which appointed

27   Greg Braun as the Plan Agent to implement the plan. Coast Grain, the bankrupt estate, is the majority

28   shareholder in Coast Grain de Mexico, a Mexican corporation. Greg Braun was appointed sole

                                                1

1 administrator of Coast Grain de Mexico on March 10, 2003.

2      The Claims bar date set by the Court was April 11, 2002 and extended to October 2, 2002 for

3 certain creditors. Braun contends that Dairy Feed Group was not extended time to file its proof of claim.

4 On June 26, 2003, Dairy Feed Group filed a proof of claim for $873,300.00 as "money owed," and

5 which is alleged to be secured by the assets of Coast Grain de Mexico.

6 **B.**     **Prior Court Order on Braun's Motion for Partial Summary Judgment**

7      On January 7, 2005, Braun moved for partial summary judgment on the fifth and sixth claims

8 for relief. In the prior motion, as in this motion, plaintiff sought to adjudicate that defendant has no

9 ownership interest in Coast Grain de Mexico. Plaintiff argued that Mexican law applies to determine

10 who is the owner of the shares of Coast Grain de Mexico. Defendant relied on California law.

11     **1.**     **Choice of Law**

12      This Court thus first performed a choice of law analysis. At the direction of Supreme Court and

13 Ninth Circuit precedent, the Court turned to the Restatement (Second) of Conflict of Laws ("Restatement

14 of Conflicts") to determine whether Mexico's or California's laws apply. Restatement of Conflicts §

15 302 (1971) states that "[i]ssues involving the rights and liabilities of a corporation ... are determined by

16 ... the local law of the state of incorporation" unless "some other state has a more significant relationship

17 to the occurrence and the parties." The "internal affairs" doctrine is a conflict-of-laws principle that

18 recognizes that only one state should have the power to regulate matters peculiar to the relationship

19 among the corporation, its officers and directors, and its shareholders. *In re Sagent Technology, Inc.,*

20 *Derivative Litigation*, 278 F.Supp.2d 1079, 1090 (N.D.Cal. 2003); *see also* Restatement (Second) of

21 Conflicts § 302 (1971). Under the "internal affairs" doctrine, the rights of shareholders in a foreign

22 company are determined by the law of the place where the company is incorporated. *Batchelder v.*

23 *Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998).

24      The Court thus found that the laws of Mexico apply to this case:

25         "the parties dispute who is the owner the shares of Coast Grain de Mexico, the Mexican corporation. Thus, the dispute involves the internal

26         affairs of the Mexican corporation. Therefore, the laws of Mexico determine who is the owner of the shares of Coast Grain de Mexico."

27         (Doc. 38, p. 4-5.)

28

1  **2.      Denial of Motion without Prejudice**

2  Next, the Court turned to the applicable provision of the Mexican Commercial law cited by the

3  parties - Ley General de Sociedades Mercantile, Articulo 128 y 129.  The Court noted that the parties

4  did not provide any expert testimony on the Mexican law at issue in the case, and that expert testimony

5  is needed to prove foreign law. (Doc. 38, p. 6.) The Court found that plaintiff had not carried his burden

6  of proof because Braun did not provide an expert opinion as to what the Mexican law says or how it is

7  applied.

8  In addition, the motion was denied due to the request of defendant for additional discovery.

9  There was a volume of discovery documents which had been lately produced, and coupled with the

10  language barrier, made on-going discovery reasonable and necessary.  Accordingly, the Court denied

11  the motion without prejudice.

12  **ANALYSIS & DISCUSSION**

13  **A.  Summary Judgment Standard**

14  Initially, it is the moving party's burden to establish that there is "no genuine issue of material

15  fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c); *British*

16  *Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978).  When plaintiff is the moving party,

17  plaintiff's burden of proof is: (1) to demonstrate affirmatively (by admissible evidence) that there is no

18  genuine issue of material fact as to each element of its claim for relief, entitling it to judgment as a

19  matter of law; and (2) to demonstrate the lack of any genuine issue of material fact as to affirmative

20  defenses asserted by the defendant. Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed Civ. Pro.*

21  *Before Trial,* §14:140 (the Rutter Group 2005) and cases cited therein.  Thus, plaintiff must establish

22  not only the elements of his claim, by undisputed material facts, but also that the defendants' affirmative

23  defenses do not raise triable issues of fact. Summary judgment should be entered, after adequate time

24  for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

25  existence of an element essential to that party's case, and on which that party will bear the burden of

26  proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

27  Rule 56(e) requires the party against whom the motion is made to "set forth specific facts

28  showing that there is a genuine issue for trial." Absent such a showing, a properly supported motion for

1    summary judgment may be granted if the court finds it appropriate." *Nelson, Robbins, et al v. Louisiana*

2    *Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

3           To establish the existence of a factual dispute, the opposing party need not establish a material

4    issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to

5    require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank*

6    *of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631.  The

7    opposing party "must do more than simply show that there is some metaphysical doubt as to the material

8    facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-

9    moving party, there is no 'genuine issue for trial.'"*Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*,

10   475 U.S. 574, 587 (1986) (citations omitted).  The opposing party's evidence is to be believed and all

11   reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor

12   of the opposing party.  *Anderson*, 477 U.S. at 255.  The court must not weigh the evidence and must

13   draw all reasonable inferences in favor of the nonmoving party. *See Freeman v. Arpaio*, 125 F.3d 732,

14   735 (9th Cir.1997); *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 112 S.Ct. 2072,

15   2077 (1992) ("Because this case comes to us on petitioner Kodak's motion for summary judgment, the

16   evidence of respondents is to be believed, and all justifiable inferences are to be drawn in their favor.").

17          The court, however, has no duty to search the record, *sua sponte*, for some genuine issue of

18   material fact; the court may rely entirely on the evidence of the moving party.  *Guarino v. Brookfield*

19   *Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).  If the motion is based on deposition testimony,

20   the court may rely exclusively on portions highlighted by the moving party and need not comb the

21   deposition to discover conflicting testimony.  *Guarino v. Brookfield Township Trustees, supra*, 980 F.2d

22   at 403.  The court is not obligated to consider matters not specifically brought to its attention. Thus, it

23   is immaterial that helpful evidence may be located somewhere in the record. The opposition must

24   designate and reference specific triable facts. *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (DC

25   Cir. 1988).  Inferences drawn from the evidence, however,  must be viewed in the light most favorable

26   to the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112

27   S.Ct. 2072, 2077 (1992).

28          Plaintiff moves for partial summary judgment as to the fifth and sixth claims for relief.  The fifth

1   claim is against Dairy Feed Group and seeks a "determination of the nature, extent and validity of

2   defendant's ownership claim in Coast de Mexico." (Complaint ¶29.)  The sixth claim for relief is an

3   objection to and request for disallowance of Dairy Food Groups proof of claim at of $873,300 which

4   Dairy Feed Group alleges is secured by an interest in Coast de Mexico.  (Complaint ¶31-33.)

5   **B.      Mexican or California Law**

6          The parties continue to dispute whether Mexico or California law applies.  Defendants' argument

7   for California law is that the defendant Dairy Feed Group's transaction with the Weinbergs occurred in

8   California and that both Dairy Feed Group and the Weinbergs are California residents.

9          The problem with this argument is that it ignores the third entity, the Mexican corporation Coast

10  Grain de Mexico.  As between Weinberg and Dairy Feed Group, California law may apply.[1]  The issue

11  before the Court, however, is to determine how their purported transaction affects the corporation Coast

12  Grain de Mexico.  As discussed in detail in the Court's prior order on plaintiff's motion, the Restatement

13  of Conflicts states that a corporation's "internal affairs" are controlled by the law of the place of

14  incorporation. The place of incorporation is Mexico.

15         Dairy Feed Group argues that it "does not seek to vote the stock" or "take any action attributable

16  to shareholder status," and implicitly argues that the "internal affairs" are not triggered.  To the contrary,

17  Dairy Feed Group is seeking ownership of Coast Grain de Mexico, which it can only do by owning

18  stock.  Therefore, who owns the stock is the quintessential aspect of the "internal affairs," of the

19  corporation.

20  **C.      Stock Purchase Agreement between Weinberg and Dairy Feed Group**

21         The additional evidence the Court has, which the Court did not have in the prior motion, is Ms.

22  Weinberg-Gewelber's declaration and the Stock Purchase Agreement.

23         The Stock Purchase Agreement involves the sale of the stock in Coast Grain Company, a

24  California Corporation.  The Sellers are not the Weinbergs, individually, but the Weinbergs in their

25  trustee capacity.  The Sellers are "Marcha Weinberg, Trustee of Marcha's Trust U/D/T dated December

26

27         [1] The Stock Purchase Agreement between the Weinberg entities and Dairy Feed Group, discussed infra, contains
    a choice of law provision indicating that the law of California applies to the transaction. (Ms. Weinberg-Gewelber Decl.,
28  Exh. A §8.9.)

1  7, 1992 and Marcha Weinberg, Robert A. Weinberg and Rhona Weinberg Gewelber, trustees of the Bob

2  and Marcha Weinberg Decedent's trust U/D/T dated February 14, 1991" and the Buyer is "Dairy Feeds

3  Group."   The Stock Purchase Agreement was entered on October 3, 2001. (Exh. A to Ms. Weinberg-

4  Gewelber Decl.)

5       The Stock Purchase Agreement does not mention Coast Grain de Mexico. The Stock Purchase

6  Agreement refers to "affiliates" and "subsidiaries," but there is not any language which explicitly

7  transfers the Coast Grain de Mexico stock to Dairy Feed Group.  That is probably why Ms. Weinberg-

8  Gewelber testifies in her declaration that,

9          "When I signed the October 3, 2001 stock purchase agreement, I assumed
           without specific discussion that by transfer of stock the entire company
10         was being transferred, including Coast de Mexico and any stock in that
           Mexican company that Coast Grain Company, I, and my family owned
11         shares of.  I had no intention for any stock or assets of Coast de Mexico
           to be withheld from the Dairy Feeds Group, and assumed the Dairy Feeds
12         Group would actually or beneficially own all of the Coast de Mexico as
           part of the October 3, 2001 transaction." (Ms. Weinberg-Gewelber Decl.
13         ¶8.)

14 Ms. Weinberg-Gewelber then states that she signed a proxy, dated February 8, 2002, to transfer Coast

15 De Mexico's stock to the Dairy Feeds Group, with the intent to transfer all shares of Coast de Mexico

16 to Dairy Feed Group.  (Ms. Weinberg-Gewelber Decl. Exh. B.)   The proxy which she attaches at Exh.

17 B is problematic.  It states:

18         "In exercise of the rights granted me by the articles of incorporation and
           by-laws of Coast Grain de Mexico, SA de CV, I hereby appoint you my
19         proxy with adequate authority to attend in the name and stead of Coast
           Grain Company, the general ordinary shareholders meeting to be held on
20         February 8, 2002 and vote thereat in such manner as you deem expedient
           my vote."  (Ms. Weinberg-Gewelber Decl. Exh. B.)

21

22 The problem is twofold.  First, by February 8, 2002, Ms. Weinberg-Gewelber had sold her stock in Coast

23 Grain Company, pursuant to the Stock Purchase Agreement, and she had no shares to proxy.  She

24 testifies she "understood" from an accountant that she had "authority" from Coast Grain Company. (Ms.

25 Weinberg-Gewelber Decl.¶9.)  Her understanding is irrelevant.

26      Second, the proxy does not mention in any way a transfer of shares of Coast Grain de Mexico.

27 There is no testimony as to what happened at the February 8, 2002 shareholder meeting.  The only

28

6

1  minutes of the February 8, 2002 meeting are in Spanish and not properly authenticated.[2] Ms. Weinberg-

2  Gewelber states "at the time I signed the proxy(ies), my intent was to transfer all shares of Coast de

3  Mexico to the Dairy Feeds Group, or to whomever the Dairy Feeds Group might designate to hold the

4  shares for its benefit." (Ms. Weinberg-Gewelber Decl. ¶9.) This is defendants best evidence that shares

5  of Coast Grain de Mexico were intended to transferred to Dairy Feed Group.[3]

6         In addition, plaintiff pointed out additional problems with the Stock Purchase Agreement. No

7  individual members of the Weinberg family are parties to the Stock Purchase Agreement and they only

8  executed the agreement in their capacities as trustees. The shares in Coast Grain de Mexico are owned

9  by the individual members of the Weinberg family, and are not owned by the Weinbergs as trustees.

10  Thus, the individual members of the Weinberg family could not have transferred their shares in Coast

11  Grain de Mexico without being parties to the Stock Purchase Agreement. To transfer their shares in

12  Coast Grain de Mexico to Dairy Feed Group, the individuals would have had to do so by a separate

13  agreement.

14         A final substantive issue with the Stock Purchase Agreement is that it calls for the delivery of

15  the "stock certificates" to the buyers at the closing. (Ms. Weinberg-Gewelber Decl. Exh. A, ¶ 2.3(b).)

16  If Ms. Weinberg-Gewelberg did intend to transfer the shares of Coast Grain de Mexico to Dairy Feed

17  Group, as she states in her declaration, Dairy Feed Group has not produced the share certificates. The

18

19

20  [2] (Woolman decl., Exh. F and G.) Exhibit F and G were exhibits to the deposition of attorney Bruce Varner, and numbered exhibit 5 and 11 at the deposition. They purport to be shareholder minutes, in Spanish. The exhibits were not properly authenticated by him - other than to say that he received these documents from the Mexican attorney. The deposition

21  excerpts of attorney Bruce Varner are themselves not property authenticated. The Ninth Circuit Court of Appeals has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of*

22  *America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing several cases). In a summary judgment motion, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [F.R.Civ.P.] 56(e)

23  and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Orr*, 285 F.3d at 773-774. A deposition or an extract therefrom is authenticated in

24  a summary judgment motion when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the deponent's testimony. *Orr*, 285 F.3d at 774. Generally, this is

25  accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. *Orr*, 285 F.3d at 774. Here, defendant offers excerpts of deposition testimony which are not properly

26  authenticated. The excerpts lack the reporter's certification and the name of the action. Nonetheless, the Court has considered the excerpts of Bruce Varner's deposition.

27

28  [3] But, even this evidence is lacking - it does not show the transfer actually took place and her intent is not relevant. Plaintiff also objects to this testimony on the ground that it is an improper opinion under FRE 702, her opinion is irrelevant.

7

1  delivery of the stock certificates was specifically called for in the Stock Transfer Agreement.[4]

2        In short, there is no issue of fact from which a reasonable trier of fact could conclude that the

3  Stock Purchase Agreement transferred or intended to transfer the Coast Grain de Mexico Shares.[5]

4  **D.      Shareholder Registry**

5        Dairy Feed Group argues that the Shareholder Registry was not in existence until 2003 and

6  implicitly argues that the Registry does not have the full force as Braun argues.

7        Braun's main argument is that the Mexican law requires recordation of the shares the

8  Shareholder Registry in order to be considered a "shareholder."  Braun's expert testified: "Neither

9  [Thomas O'Brien or Dairy Feed Group] can be acknowledged as a shareholder in Coast Grain de Mexico

10  absent a recorded entry in the Shareholder's Registry."  (Osuna Decl. ¶ 9, p.5:1-3.)  However, the

11  Registry did not exist until 2003.  The Registry, dated 2003, retrospectively documents issuance of stock

12  certificates for 1991, 1995, 1996, 1997 and 1999. (Braun Decl. Exh. B, p. 1 (1991), p. 3 and 4 (1995),

13  p.5 (1996), p.7 (1997), p.8 (1999).)  Each entry in the Registry was made on October 30, 2003, and not

14  contemporaneously with the stock issuance.  If the ownership does not exist unless Registered, than any

15  stock ownership prior to 2003 did not exist.

16        Nonetheless, the requirement of a Shareholder Registry is undisputed.  The Mexican law is

17  undisputed.  Plaintiff's expert Alejandro Osuna-Gonzalez states share ownership in a Mexican

18  Corporation requires an entry on the shareholder registry.[6]  The Mexican law, Ley General de Sociedades

---

[4] Defendants claim that the certificates do not exist. Defendants' Disputed Fact no. 6 states "Coast Grain de Mexico never issued certificates for any stock transfer," citing to an February 11, 2002 letter from a Mexican attorney, Jorge Murillo. Murillo states "please advise what to do regarding the shares certificates for I am not aware of their existence." This fact is not supported by competent evidence. The letter is not properly authenticated and there is a lack of foundation as to what Murillo means.

[5] Plaintiff also points out that Section 8.2 of the Stock Purchase Agreement is an integration clause and that the agreement is the "entire agreement between the parties."

[6] Alejandro Osuna-Gonzalez is a lawyer licensed in Mexico and a graduate of the Law School of the Universidad Iberoamericana, Tijuana in 1995. He received a LLM from Univ. of Pittsburgh, Pa. He has written articles on international commercial law and a case book on international sales. Since 1998, he has taught foreign investments, international commercial law and international sales and trade in Mexico and Puerto Rico. He founded the law firm of Osuna and Rivero in Tijuana focusing on international commercial law, Mexican corporate law, real estate law and civil and commercial litigation. Defendants neither object to Osuna as an expert nor to any of his opinions.

1    Mercantile, Articulo 128 y 129, requires that a company maintain a registry of shares, including name,

2    address and nationality of the shareholder, and the number and kind of shares.  (Osuna Decl. ¶7.)  A

3    person is not considered a shareholder of a Mexican corporation if the name does not appear on the

4    shareholder registry.  Neither Dairy Feed Group nor Thomas O'Brien is identified on Coast Grain de

5    Mexico's shareholder registry of shareholders. (Osuna Decl. ¶9.)

6         Plaintiff is correct that Defendants have not provided an alternative Mexican Shareholder

7    Registry nor admissible evidence that the Mexican Shareholder Registry is not what it purports to be.

8    Plaintiff, however, presents expert testimony, based on a review of the books of Coast Grain de Mexico

9    and review of official documents on file in the Tijuana office of the Public Registry, that no change to

10   the stock took place after 1999.

11        Defendants argue there is a mistake in the shareholder registry because it ignores the intention

12   of the Weinbergs' as shareholders. Defendants argue that <u>the documentation</u> of the transaction or <u>the</u>

13   <u>formalities</u> of the transaction may be missing, but the Weinbergs and Dairy Feed Group agree that Dairy

14   Feed Group owns the Weinbergs' shares in Coast Grain de Mexico.

15        The applicable Mexican law, to which there is undisputed expert opinion, is that the formalities

16   must be observed for the shareholder to be recognized as such.  The Stockholder Registry does not

17   record Dairy Feed Group's alleged ownership.

18   **E.    Purported Shareholder Minutes**

19        Defendants submit shareholder minutes which purport to transfer the shares from the Weinbergs

20   to Dairy Feed Group.  The minutes are not in English.  (Woolman Decl. Exh. F and G.)  The minutes

21   are unsigned. (Woolman Decl. Exh. F and G.) Defendants have not provided a translation.  Defendants

22   have not presented expert testimony as to the meaning of the purported minutes.  Defendant does not

23   present evidence that the purported shareholder meeting even occurred or what occurred at the meeting.

24        Plaintiff's unrefuted expert testifies that the unsigned minutes have no meaning under Mexican

25   law.  (Osuna Decl. ¶12.)

26        Plaintiff's unrefuted expert testifies that if the minutes are not recorded, they do no have any

27   force. (Osuna Decl. ¶12-13.)

28   /////

1   Mexican law applies to this case and to this motion.  It is unrefuted what that law means and how

2   it is applied in this case before the Court.  Defendants have not shown that there has been compliance

3   with the Mexican law to prove or show ownership.  It is undisputed that defendants are not named in

4   the Shareholder Registry.  It is undisputed that the proxies and minutes do not transfer the shares in

5   Coast Grain de Mexico to defendants under Mexican law.  Accordingly, the motion should be granted.

6   Plaintiff objected to nearly all of defendant's evidence on various grounds, including lack of

7   authentication and hearsay.  The Court does not need to reach the objections, because even considering

8   the substance of the evidence, the motion should be granted.

9   **F.      Sixth Claim for Relief**

10   Since the Court finds that Dairy Feed Group does not have shares in Coast Grain de Mexico, the

11   sixth claim for relief is moot.  The motion should be granted as to this claim.

12   **CONCLUSION**

13   For the reasons discussed more fully above, the Court GRANTS this motion as follows:

14   1.      The motion for partial summary judgment as to Defendant Dairy Feed Group as to the

15          Fifth Claim for Relief is GRANTED.

16   2.      The motion for partial summary judgment as to Defendant Dairy Feed Group as to the

17          Sixth claim for relief is GRANTED.

18   IT IS SO ORDERED.

19   **Dated:      December 16, 2005**                     **/s/ Lawrence J. O'Neill**
     b9ed48                                          UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28