IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG BRAUN, Chapter 11 Trustee, | CASE NO. CV F 04-5474 LJO |
| Plaintiffs, | **ORDER ON MOTIONS IN LIMINE** (Docs. 74, 75, 77-81, 83-87.) |
| vs. | |
| THOMAS O'BRIEN, et al., | |
| Defendants. | |

## INTRODUCTION

In this breach of fiduciary duty and related action, this Court conducted a February 24, 2006 hearing on the parties' motions in limine. Plaintiff Greg Braun ("Mr. Braun"), plan agent for Chapter 11 debtor Coast Grain Company ("Coast Grain"), appeared by counsel Justin D. Harris, Walter Law Group. Defendants Thomas O'Brien ("Mr. O'Brien") and Dairy Feed Group ("DFG") appeared by William W. Woolman, Jory, Peterson, Watkins, Ross & Woolman. As discussed below, this Court makes the following orders on the parties' motions in limine.

## BACKGROUND

### Events Preceding Coast Grain's Bankruptcy

On October 3, 2001, defendant DFG was incorporated as a nonprofit mutual benefit corporation in California. On October 3, 2001, DFG acquired Coast Grain's stock for $1 pursuant to a stock purchase agreement. As of October 3, 2001, Mr. O'Brien became DFG's secretary and treasurer. On

October 4, 2001, Mr. O'Brien became chairman of Coast Grain's board of directors and its secretary-treasurer. During October 10-15, 2001, Mr. O'Brien on Coast Grain's behalf engaged in several transactions, including signing in Agri-System's favor a $2 million promissory note and deed of trust and a security agreement. Mr. O'Brien for Coast Grain also signed a construction agreement with Agri-Systems and authorized a $500,000 payment to Agri-Systems.[1] In addition, Mr. O'Brien received $88,000 payments from Coast Grain.

On October 17, 2001, an involuntary Chapter 11 bankruptcy petition was filed against Coast Grain. Subsequently, Mr. Braun was appointed the Chapter 11 trustee.

On November 15, 2001, Mr. O'Brien became Coast Grain's president. On February 26, 2002, Mr. O'Brien received a $65,000 payment from Coast Grain. On February 26, 2002, Mr. O'Brien resigned as Coast Grain's president effective March 4, 2002. On October 28, 2003, the bankruptcy court confirmed Mr. Braun's third amended Chapter 11 plan for Coast Grain and appointed Mr. Braun as plan agent to implement the plan. Mr. Braun continues to serve as the plan agent.

**Mr. Braun's Claims**

On September 23, 2003, Mr. Braun filed against Mr. O'Brien and DFG (collectively "defendants") an adversary proceeding to allege that Mr. O'Brien attempted "to utilize DFG to claim monies, control or other items from Coast Grain to the detriment of creditors, including persons to whom O'Brien and DFG owed fiduciary duties." More specifically, Mr. Braun's complaint alleges that Mr. O'Brien violated his fiduciary duties to Coast Grain by:

1.  Authorizing and executing a $2 million note and deed of trust in Agri-Systems' favor in October 2001 without adequate investigation or proper corporate authority;[2]
2.  Transferring without consideration valuable contracts between Miller Brewing Company and Coast Grain to Thomas Maurer or an entity controlled by Thomas Maurer;
3.  Entering into an employment agreement with Coast Grain and authorizing retention and

---

[1] This Court issued its February 17, 2006 order on the parties' stipulation that Mr. Braun will not seek damages relating to Agri-Systems to render Agri-Systems transactions irrelevant. At the February 24, 2006 hearing, the parties reaffirmed as much.

[2] This claim is moot based on the parties' stipulation.

2

    severance payments on the eve of the involuntary bankruptcy petition with full knowledge of Coast Grain's insolvency and without proper corporate authority;

4. Receiving $78,000 as a retention payment on the eve of the involuntary bankruptcy petition with full knowledge of Coast Grain's insolvency and without proper corporate authority;

5. Receiving $65,000 in severance payments from Coast Grain after the filing of the involuntary bankruptcy petition without proper corporate authority or bankruptcy court approval;

6. Authorizing $900,000 to Coast Grain employees after the filing of the involuntary bankruptcy petition in disregard of bankruptcy requirements and without proper corporate authority or bankruptcy court approval; and

7. Failing to observe bankruptcy laws and guidelines to manage Coast Grain after the filing of the involuntary bankruptcy petition.

This Court issued its June 8, 2004 order to withdraw the adversary proceeding from the bankruptcy court to become this action before this Court. Mr. Braun proceeds here on three remaining causes of action.

As noted in the pretrial order, for his breach of fiduciary duties (first) cause of action, Mr. Braun seeks from defendants approximately $158,245.50 for payments received by Mr. O'Brien. Mr. Braun also seeks approximately $900,000 for retention payments made to employees at Mr. O'Brien's request without bankruptcy court approval and in derogation of his fiduciary duties to Coast Grain and its creditors.

For his avoidable fraudulent transfers 11 U.S.C. §548 (third) cause of action, Mr. Braun seeks to avoid payments to Mr. O'Brien of $78,000 and $10,000 and seeks repayment to the estate of those amounts.

For his post-petition transfers 11 U.S.C. §549 (fourth) cause of action, Mr. Braun seeks avoidance and repayment of the $65,000 payment to Mr. O'Brien, plus additional taxes paid on his behalf in the amount of $5,245.50, for a total of $70,245.50.

This Court granted Mr. Braun summary judgment/adjudication as to his fifth cause of action to

determine that DFG has no ownership interest in Coast Grain de Mexico, an Mexican corporation. This Court further granted Mr. Braun summary judgment/adjudication as to his sixth cause of action to disallow DFG's $873,300 claim in the Coast Grain bankruptcy to render moot Mr. Braun's recharacterization of DFG claim as equity (seventh) cause of action, which this Court dismissed.

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
## ATTORNEY EXPERT TESTIMONY

Defendants seek to exclude opinions/legal conclusions of Mr. Braun's attorney expert Gerald K. Smith ("Mr. Smith") that Mr. O'Brien acted in bad faith or unreasonably or breached duties, including the standard of care. Mr. Braun disclosed Mr. Smith as an expert who has experience in "malpractice and disclosure/disqualification cases in the bankruptcy area." Mr. Smith prepared a November 16, 2005 preliminary expert report to summarize his opinions that:

1.  Coast Grain's $78,000 and $65,000 payments to Mr. O'Brien, absent full disclosure and authorization by disinterested directors, may be recovered by Mr. Braun based on breach of the duty of loyalty;

2.  Mr. O'Brien violated Bankruptcy Code provisions by paying himself $65,000 at the commencement of Coast Grain's bankruptcy case without bankruptcy court approval;

3.  Mr. O'Brien is not entitled to compensation in the absence of a bankruptcy court order to approve his employment;

4.  Mr. O'Brien conducted an apparent inadequate investigation into the value of assets and facts relevant to payments regarding Agri-Systems transactions to constitute a potential breach of his duty of care to Coast Grain for which Mr. Braun may recover damages;[3] and

5.  Mr. O'Brien breached his duty of due care to Coast Grain by authorizing $900,000 payments to Coast Grain employees after commencement of its bankruptcy and without bankruptcy court authorization, and Mr. Braun may recover such payments from Mr. O'Brien without first attempting to recover the payments from the employees.

---

[3] This opinion is moot based on the parties' stipulation to exclude evidence regarding Agri-Systems transactions.

1    Defendants did not depose Mr. Smith and characterize his opinions in his expert report as legal
2 conclusions that Mr. O'Brien breached duties and which address Mr. Braun's potential recovery under
3 specific statutes and legal theories.  Defendants contend that Mr. Smith is unable to opine as to
4 governing legal standards in that the California Corporation Code sets forth applicable law to establish
5 Mr. O'Brien's duties.  According to defendants, issues whether Mr. O'Brien acted in bad faith or
6 unreasonably or breached duties call for inadmissible legal conclusions.  Defendants assert that Mr.
7 Smith's testimony "should be limited to his opinions regarding principles of corporate governance and/or
8 practices."

9    Mr. Braun responds that Mr. Smith is qualified to opine as to fiduciary duties of a corporate
10 officer and director before and during bankruptcy in that he has served as a trustee and has provided
11 expert testimony for bankruptcy estates.  According to Mr. Braun, Mr. Smith "is in the best position to
12 assist the trier of fact in navigating the challenging worlds of fiduciary duties and bankruptcy" which
13 "are outside the common realm of experience and require specialized assistance."  Mr. Braun argues a
14 pretrial ruling would be premature in that defendants (and presumably this Court) do not know which
15 opinions Mr. Smith will offer at trial.  Mr. Braun concludes that this Court "is simply without sufficient
16 information, based on Mr. Smith's report, to make a determination that the opinions to be proffered at
17 trial would be inadmissible or are even legal conclusions."

18    At the hearing, the parties agreed that Mr. Smith may identify standards of care and obligations
19 applicable to a person in Mr. O'Brien's position in Coast Grain.

## Discussion

21    A qualified expert witness may testify "in the form of an opinion or otherwise" when "scientific,
22 technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to
23 determine a fact in issue." F.R.Evid. 702.  The requirement to "assist the trier of fact to understand the
24 evidence or to determine a fact in issue" goes "primarily to relevance." *Daubert v. Merrell Dow*
25 *Pharmaceuticals, Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 2795 (1993).  Admissibility of opinion
26 testimony is directed to the trial court's broad discretion and is reviewable only for abuse of discretion.
27 *United States v. Henderson*, 68 F.3d 323, 325 (9th Cir. 1995).

28    F.R.Evid. 704 permits opinion testimony on ultimate issues and provides that "testimony in the

5

form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Whether expert opinion is "otherwise admissible" depends, in part, on whether it will "assist the trier of fact" to understand the evidence or to determine a fact in issue. *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212, (D.C. Cir. 1997); *see* F.R.Evid. 702.

Expert legal conclusions (i.e., opinions on an ultimate issue of law) cannot properly assist the trier of fact to understand the evidence or to determine a fact in issue and thus are not otherwise admissible. *Burkhart*, 112 F.3d at 1212; *see Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066, n. 10 (9th Cir. 2002) ("an expert witness cannot give an opinion as to her legal conclusion"); *Weston v. WMATA*, 78 F.3d 682, 684 n. 4 (D.C. Cir. 1996) ("legal conclusions on domestic law . . . are outside [an expert's] area of expertise"); *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (expert testimony couched as a "legal conclusion" is "not helpful to the jury"). "When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2nd Cir. 1994) (italics in original). F.R.Evid. 704 does not permit "opinions which would merely tell the jury what result to reach" or which are "phrased in terms of inadequately explored legal criteria." F.R.Evid. 704 Adv. Comm. Note; *see Weston*, 78 F.3d at 684, n. 4 (an expert cannot testify as to whether "discrimination" occurred for Title VII purposes).

"Each courtroom comes equipped with a 'legal expert' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart*, 112 F.3d at 1213; *Duncan*, 42 F.3d at 101; *Strong v. E.I. DuPont de Nemours Co., Inc.*, 667 F.2d 682, 685-686 (8th Cir. 1981); *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) In general, witnesses are in no better position than the jury to draw a legal conclusion from the evidence. *United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir. 1987). Use of legal terminology may be objectionable if the terms have a "separate, distinct and specialized meaning in the law different from that present in the vernacular." *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997).

The line between inadmissible legal conclusions and admissible assistance to the trier of fact to

1  understand the evidence or to determine a fact in issue "is not always bright." *Burkhart*, 112 F.3d at

2  1212. An "expert may offer his opinion as to facts that, if found, would support a conclusion that the

3  legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been

4  satisfied." *Burkhart*, 112 F.3d at 1207. The Advisory Notes to F.R.Evid. 704 (opinion on ultimate

5  issue) are helpful and note:

> The abolition of the ultimate issue rule does not lower the bar so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurance against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to made a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. McCormick, § 12.

12  In sum, Mr. Smith opines in his report that Mr. O'Brien breached the duty of loyalty and violated

13  the Bankruptcy Code by taking payments from Coast Grain and is not entitled to employment

14  compensation. Mr. Smith further opines that Mr. Braun may recover damages and inappropriate

15  payments from Mr. O'Brien. Based on his expert report alone, Mr. Smith does not appear to limit his

16  opinions as to facts that, if found, would support a conclusion that Mr. O'Brien breached duties. In his

17  report, Mr. Smith appears to opine that legal duties were breached and that Mr. Braun is entitled to

18  recover damages or improper payments made to or by Mr. O'Brien. Mr. Smith's report appears to tell

19  the jury what result to reach and to include inadmissible legal conclusions. Nonetheless, this Court

20  recognizes that Mr. Smith, as an expert, is entitled to latitude to the extent his opinions benefit the jury

21  to explain and clarify transactions and Mr. O'Brien's duties.

### Order

23  This Court PERMITS Mr. Smith's opinion testimony to the extent it benefits the jury to explain

24  and clarify transactions and Mr. O'Brien's fiduciary duties at issue. This Court ADMONISHES Mr.

25  Braun's counsel to use caution regarding Mr. Smith's testimony on ultimate issues.

### MR. BRAUN'S MOTION IN LIMINE NO. 1 TO EXCLUDE
### MR. O'BRIEN'S EXPERT TESTIMONY

28  Mr. Braun seeks to exclude Mr. O'Brien's expert testimony, including that on Coast Grain's

1  insolvency. Mr. O'Brien disclosed no expert witnesses and identified no expert witnesses in the joint
2  pretrial statement for inclusion in the pretrial order. The February 2, 2006 pretrial orders limits who may
3  testify:

> Only witnesses listed in this pretrial order (including "rebuttal" and/or "impeachment" witnesses) shall be allowed to testify at trial, except as may otherwise be provided by this Court's order after a showing of good cause, or by stipulation of the parties and this Court's order thereon.

7  Mr. Braun fears that defense counsel may attempt to elicit Mr. O'Brien's opinion testimony on
8  Coast Grain's insolvency. Mr. Braun notes that it disclosed an insolvency expert. Mr. Braun contends
9  that he has not been permitted to examine Mr. O'Brien regarding is qualifications or purported expert
10 opinions. Thus, without citing authority other than the pretrial order, Mr. Braun argues that Mr. O'Brien
11 is precluded to offer expert opinion on Coast Grain's insolvency.
12 Defendants respond that Mr. O'Brien will offer "his opinions and understandings, to the extent
13 such are relevant to establishing the reasonableness of decisions he made at particular points [when] he
14 was involved with running Coast Grain Company. Defendants cannot predict, until Plaintiff presents
15 its case, which specific opinions Mr. O'Brien may seek to offer as justification for his state of mind and
16 actions/inactions."

**Discussion**

18 F.R.Civ.P. 26(a)(2)(A) requires parties to disclose the identity of each expert witness to testify
19 at trial. F.R.Civ.P. 26(a)(2) "imposes an additional duty to disclose information regarding expert
20 testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare
21 for effective cross examination and perhaps arrange for expert testimony from other witnesses."
22 F.R.Civ.P. 26 Adv. Comm. Notes (1993 Amendments).
23 F.R.Civ.P. 37(c)(1) addresses failure to disclose required information: "A party that without
24 substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such
25 failure is harmless, be permitted to use as evidence at a trial . . . any witness or information not so
26 disclosed." "Rule 37(c)(1) gives teeth . . . by forbidding the use at trial of any information required to
27 be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
28 259 F.3d 1101, 1106 (9th Cir 2001). "The power of the trial court to exclude exhibits and witnesses not

1  disclosed in compliance with discovery and pretrial orders is essential" to judicial management of the
2  case. *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 897-898 (8th Cir. 1978); *Sylla-*
3  *Sawdon*, 47 F.3d at 284. The Ninth Circuit Court of Appeals has upheld a district court ruling to
4  preclude an expert from testifying when the expert was not timely and properly disclosed. *Jenkins v.*
5  *Whittaker Corp.*, 785 F.2d 720, 728 (9th Cir.), *cert. denied*, 479 U.S. 918, 107 S.Ct. 324 (1986).

6        F.R.Civ.P. 16(f) and 37(b)(2)(B) "authorize district courts to prohibit the admission of evidence
7  proffered by the disobedient party." *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th
8  Cir.), *cert. denied*, 516 U.S. 822, 116 S.Ct. 84 (1995); *United States v. 68.94 Acres of Land*, 918 F.2d
9  389, 396 (3rd Cir. 1990); *Smith v. Rowe*, 761 F.2d 360, 366 (7th Cir. 1985). "The sanction of exclusion
10 is thus automatic and mandatory unless the party to be sanctioned can show that its violation of Rule
11 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996);
12 *see Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 728 (7th Cir. 1999), *cert. denied*, 529 U.S. 1067, 120 S.Ct.
13 1673 (2000). "[I]t is the obligation of the party facing sanctions for belated disclosure to show that its
14 failure to comply with [F.R.Civ.P. 26] was either justified or harmless . . ." *Wilson v. Bradless of New*
15 *Englanc, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001). "Implicit in Rule 37(c)(1) is that the burden is on the party
16 facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107.

17       Although Mr. O'Brien appears in the pretrial order as a lay witness, he was not disclosed and has
18 not been treated as an expert. Thus, attention turns to the scope of his lay opinion testimony.

19       F.R.Evid. 602 addresses witness personal knowledge and provides in pertinent part:

20           A witness may not testify to a matter unless evidence is introduced sufficient to
   support a finding that the witness has personal knowledge of the matter. Evidence to
21           prove personal knowledge may, but need not, consist of the witness' own testimony.

22 Lay witness testimony must be based on what he/she actually observed or perceived through his/her
23 senses, i.e., the witness must have first-hand knowledge acquired by directly perceiving the event that
24 is the subject of his/her testimony. *See* F.R.Evid. 602, Adv. Comm. Notes (1972); *SEC v. Singer*, 786
25 F.Supp. 1158, 1167 (S.D. N.Y. 1992). The party offering the evidence has the burden to show the
26 witness has personal knowledge. F.R.Evid. 602; *United States v. Davis*, 792 F.2d 1299, 1303 (5th Cir.
27 1986).

28       Under F.R.Evid. 701, lay witness testimony "in form of opinions or inferences is limited to those

opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) **not based on scientific, technical, or other specialized knowledge** within the scope of Rule 702." (Bold added.)

For lay opinion testimony to be admissible, the following must be present:

1. The witness must have personal knowledge of the matter forming the basis of his/her opinion;
2. There must be a rational connection between the opinion and the facts upon which it is based;
3. The opinion or inference must be helpful to the trier of fact, either in understanding the testimony or in determining a fact in issue;
4. The opinion may not be based on scientific, technical or other specialized knowledge.

2 Jones & Rosen, Federal Civil Trials and Evidence (2005) Opinion Testimony, para. 8:1412, p. 8F-8 and 8F-9.

Admissibility of opinion testimony is directed to the trial court's broad discretion and is reviewable only for abuse of discretion. *United States v. Henderson*, 68 F.3d 323, 325 (9th Cir. 1995).

Mr. Braun broadly contends that Mr. O'Brien cannot offer opinion testimony on insolvency because he was not disclosed as an expert. In his papers, Mr. Braun fails to address the scope of Mr. O'Brien's lay opinion testimony and to explain how the issue of insolvency in this context is reserved for experts. Defendants do not help matters by failing to give a clue as to Mr. O'Brien's potential opinions, including any on insolvency. Clearly, Mr. O'Brien may provide his lay opinion if it meets F.R.Evid. 701 requirements. To that end, Mr. O'Brien may testify as to his actions and his reasons for them in his capacity as a lay percipient witness. Mr. O'Brien is precluded to give expert opinions, including explanations of statutes and law and their applicability.

### Order

This Court PERMITS Mr. O'Brien to testify as to F.R.Evid. 701 lay opinion and his actions and reasons for them in his capacity as a lay percipient witness. This Court PRECLUDES Mr. O'Brien's expert opinions, including explanations of statutes and law and their applicability.

///

## MR. BRAUN'S UNOPPOSED MOTION IN LIMINE NO. 2 TO EXCLUDE CONTENTIONS THAT MR. BRAUN SEEKS TO RECOVER FOR COAST GRAIN CREDITORS

Mr. Braun seeks to exclude contentions that Mr. Braun seeks to recover for Coast Grain's third-party creditors. Mr. Braun contends that he seeks damages caused by defendants' breaches of fiduciary duties owed to Coast Grain and which compromised Coast Grain's ability to pay creditors. Mr. Braun argues that such claims belong to the bankruptcy estate and that Mr. Braun has standing to pursue such claims. Mr. Braun denies that he seeks to recover third-party creditors' claims. Mr. Braun argues that mischaracterization of Mr. Braun's claims as third-party creditor claims "will have a prejudicial and unnecessarily confusing and misleading effect on the jury, and will unfairly affect the entire trial."

Defendants do not oppose the motion in limine.

### Order

This Court EXCLUDES evidence or claims that Mr. Braun seeks to recover for Coast Grain third-party creditors.

## MR. BRAUN'S UNOPPOSED MOTION IN LIMINE NO. 3 TO PRECLUDE ATTEMPTS TO DISPROVE UNDISPUTED FACTS

Mr. Braun seeks to preclude attempts to disprove the pretrial order's 29 undisputed facts. Mr. Braun notes that the parties "will therefore proceed to trial in reliance upon the belief that these undisputed facts are established." Mr. Braun argues that attempt to disprove or contradict an undisputed fact would be unfair and misleading and would invoke irrelevant or unduly prejudicial matters.

Defendants do not dispute the motion in limine.

Mr. Braun seeks a blanket order and points to no particular undisputed fact subject to challenge. Defendants appear to concede that the pretrial order supersedes the pleadings and is the operative "pleading" for trial, including its undisputed facts.

### Order

This Court PRECLUDES attempts to disprove the pretrial order's undisputed facts and ADMONISHES counsel that the pretrial order is the operative pleading for trial, including its undisputed facts.

**MR. BRAUN'S MOTION IN LIMINE NO. 4 TO EXCLUDE**

**REFERENCE TO THE WARN ACT**

Mr. Braun seeks to exclude reference to the Worker Adjustment and Retraining Notification Act ("WARN Act"). Mr. Braun anticipates defendants will claim that the WARN Act required Mr. O'Brien to authorize February 26, 2002 retention payments of $900,000 to Coast Grain employees. As such, Mr. Braun expects defendants to argue that Mr. Braun can claim no damages for the payments.

The parties cite to WARN Act definitions and agree that the WARN act requires an "employer" to provide a 60-day advance notice to employees prior to a "plant closing" or "mass layoff" that causes an "employment loss." Mr. Braun further notes that under the WARN Act, penalties may be imposed on a qualified employer which fails to provide required notice. Citing to 29 U.S.C. § 2104(a)(1), defendants note that if an employer fails to give the 60-day notice, an employer must pay employees that which they would have earned had the notice been given.

Mr. Braun contends that defendants have made no offer of proof in discovery responses or otherwise to demonstrate WARN Act relevancy or application. Mr. Braun argues that the probative value of WARN Act evidence is substantially outweighed by risk of prejudice, confusion and misleading effect in that bankruptcy law required Mr. O'Brien to seek bankruptcy court approval prior to taking actions "outside the ordinary course of business." As to such bankruptcy law, Mr. Braun cites to 11 U.S.C. § 363(b)(1) which addresses administrative powers of trustees.

Defendants contend that the WARN Act is relevant to damages and the reasonableness of defendants' actions. Defendants note that Mr. O'Brien will testify that when the retention payments were made, Coast Grain was neither liquidating nor winding up and that Mr. O'Brien understood the retention payments would eliminate or reduce WARN Act obligations. At the hearing, defense counsel argued defendants are entitled to an offset to the extent retention payments could be attributable to WARN Act obligations.

Whether a bankrupt entity is subject to the WARN Act depends whether it is winding up or continuing as a going concern. *See In re United Healthcare System, Inc.*, 200 F.3d 170, 178 (3rd Cir. 1999). Mere filing for bankruptcy "does not exempt an entity from the WARN Act." *United*

*Healthcare*, 200 F.3d at 177.  Determination whether a bankrupt entity qualifies as an "employer"[4] subject to the WARN Act "depends in part on the nature and extent of the entity's business and commercial activities while in bankruptcy and not merely on whether the entity's employees continue to work 'on a daily basis'":

> The more closely the entity's activities resemble those of a business operating as a going concern, the more likely it is that the entity is an "employer;" the more closely the activities resemble those of a business winding up its affairs, the more likely it is the entity is not subject to the WARN Act.

*United Healthcare*, 200 F.3d at 178 (non-profit health care services corporation was not an "employer" subject to the WARN Act because it ceased operating its business as a going concern and prepared for liquidation).

The parties fail to explain whether Coast Grain operated as a going concern or wound down at the time of the employee payments, which appear to have been made near or shortly after the bankruptcy filing.  If Coast Grain was operated as a going concern, the WARN Act appears to contribute to Mr. O'Brien's defense for his actions.  Mr. Braun seeks a broad exclusion of WARN Act reference but fails specifically to substantiate irrelevance or undue prejudice of the WARN Act.  Mr. Braun seeks a ruling akin to summary adjudication that the WARN Act is inapplicable to the $900,000 payments at issue.  In the absence of stronger legal support, Mr. Braun fails to justify his requested broad exclusion.  Nonetheless, evidence on the WARN Act must be limited to address Mr. O'Brien's actions and reasons for them and otherwise comply with this Court's order on Mr. Braun's motion in limine number one.

### Order

Based on defense counsel's representation on limited use and purpose of potential WARN Act evidence, this Court LIMITS WARN Act evidence to address Mr. O'Brien's actions and reasons for them and REQUIRES such evidence comply with this Court's order on Mr. Braun's motion in limine number one.  If WARN Act evidence exceeds the scope contemplated at the hearing, this Court ORDERS counsel to address such evidence with the Court outside the jury's presence.

---

[4] The WARN Act defines employer as a business enterprise that employs 100 or more employees, excluding part-time employees or 100 or more employees who in aggregate work at least 4,000 hours per week, exclusive of overtime.  29 U.S.C. § 2101(a)(1).

### MR. BRAUN'S UNOPPOSED MOTION IN LIMINE NO. 5 TO EXCLUDE
### EVIDENCE TO CONTRADICT COAST GRAIN BANKRUPTCY COURT RECORDS

Mr. Braun seeks to exclude evidence to contradict Coast Grain bankruptcy court records. Mr. Braun claims that defendants refused to stipulate to disputed facts which are not subject to reasonable dispute because they relate to whether the bankruptcy court made certain orders. Mr. Braun contends that evidence which contradicts official bankruptcy court records would be unfair and misleading.

Defendants do not oppose the motion in limine to exclude evidence to contradict the "bankruptcy court docket" but contend that Mr. Braun has the burden to establish the docket's relevance to this action. Defendants argue that Mr. Braun must establish lack of bankruptcy court approval for payments to Mr. O'Brien and that the docket, without more, neither establishes whether bankruptcy court approval was obtained nor prohibits Mr. O'Brien to raise an issue. Defendants do not dispute the accuracy of the bankruptcy court docket.

Mr. Braun seeks a broad, not well defined exclusion. Mr. Braun notes that the bankruptcy court docket approximates 350 pages. Defendants appear to limit the scope of the motion in limine to the bankruptcy court docket, not records reflected in the docket. An order to exclude anything that contradicts the bankruptcy court docket or records would be difficult to police and would presume absolute accuracy of the records. Mr. Braun points to no practical effect of his requested order, and at the hearing, his counsel acknowledged "no downside" to denial of the motion in limine.

### ORDER

This Court DENIES Mr. Braun's motion in limine to exclude evidence to contradict Coast Grain bankruptcy records and ORDERS Mr. O'Brien, prior to trial, to review and become familiar with the bankruptcy court docket to eliminate undue waste of time at trial when he is questioned about the docket.

### MR. BRAUN'S UNOPPOSED MOTION IN LIMINE NO. 6 TO EXCLUDE
### EVIDENCE OF RETALIATION AGAINST DEFENDANTS

Mr. Braun seeks to exclude evidence of retaliation against defendants. Mr. Braun claims that defendants have asserted that Mr. Braun brings this action in bad faith and to retaliate against defendants "for statements and/or actions made or undertaken against one or more members of the Coast Grain unsecured creditors committee." Mr. Braun further claims that this Court denied defendants' request

14

to belatedly attempt to include such assertion in the pretrial order. Mr. Braun argues that the assertion is irrelevant, would greatly expand the trial's scope and would be extremely prejudicial.

Defendants do not oppose the motion in limine.

### Order

This Court EXCLUDES evidence of retaliation against defendants.

### MR. BRAUN'S UNOPPOSED MOTION IN LIMINE NO. 7 TO EXCLUDE PRIOR SETTLEMENT OFFERS

Mr. Braun contends that evidence of prior settlement offers is excluded under F.R.Evid. 408.

Defendants do not oppose the motion in limine.

### Order

This Court EXCLUDES evidence of settlement offers and negotiations.

### MR. BRAUN'S MOTION IN LIMINE NO. 8 TO EXCLUDE CERTAIN DEFENSE EXHIBITS

Mr. Braun seeks to exclude as irrelevant the following defense exhibits of which no copies have been provided to this Court:

**Coast Grain's W-2 Wage Form And Tax Statement 2002 (Bates stamped T00586)**

Mr. Braun argues that the W-2 wage form provided by Coast Grain to Mr. O'Brien is irrelevant because Undisputed Fact No. 24 provides: "On or about February 26, 2002, Mr. O'Brien received a payment from Coast Grain in the amount of $65,000." Mr. Braun further points to Undisputed Fact Nos. 25 and 29 that Mr. O'Brien never obtained bankruptcy court approval for the $65,000 payment or his Coast Grain employment.

Defendants intend to use the W-2 wage form to support their position that the payment was salary.

The undisputed facts fail to indicate that the payment was salary. Mr. Braun points to no irrelevancy of the W-2 wage form.

### Order

This Court DENIES the motion in limine to exclude the W-2 wage form.

///

### Riley C. Walter's Declaration To Support Application For Payment Of Fees And/Or Expenses

Mr. Braun contends that the declaration is irrelevant and incomplete and contains no information pertinent to Mr. Braun's remaining claims.

Defendants contend the declaration "is relevant to the Madera Mill, to the extent it is put at issue at trial."

Since the substance of the declaration is not at issue, the declaration is excluded.

### Order

This Court GRANTS the motion in limine to exclude the declaration.

### April 30, 2003 Trustee's Disclosure Statement

Mr. Braun contends that the disclosure statement is irrelevant and was not approved by the bankruptcy court.

Defendants contend the declaration "is relevant to the Madera Mill, to the extent it is put at issue at trial."

Since the substance of the disclosure statement is not at issue, the disclosure statement is excluded.

### Order

This Court GRANTS the motion in limine to exclude the disclosure statement.

### Documents Regarding Coast Grain De Mexico

Mr. Braun contends that the following documents regarding Coast Grain de Mexico are irrelevant in that this Court summarily adjudicated that DFG has no interest in Coast Grain de Mexico and no claim in Coast Grain's bankruptcy:

1. Declaration of Greg Braun in Support of Plaintiff's Motion for Partial Summary Judgment, dated November 18, 2005;
2. Joanne Mittwer's January 5, 2005 e-mail to Mr. Braun and John Stellingwerf re Mexico Money (Bates stamped TO00382-TO00383);
3. John Stellingwerf's October 18, 2003 letter to Mr. Braun (Bates stamped CG225862);
4. John Stellingwerf's October 2, 2002 letter to Sr. Murillo (Bates stamped CG271023);

1      5.    Coast Grain de Mexico Ordinary Shareholders' Meeting – March 10, 2003 (Bates stamped CG223993-CG224006);

3      6.    Bruce Varner's January 14, 2002 letter to Sr. Murillo (Bates stamped CG097745); and

4      7.    Bill of Sale and Limited Release of Liability between Coast Grain de Mexico and Star Milling Co., dated December 31, 2002 (Bates stamped CG223946).

Defendants do not oppose the motion in limine, except as to John Stellingwerf's October 2, 2002 and October 18, 2003 letters. Defendants contend Mr. Stellingwerf's letters are relevant to his credibility, if he testifies.

To the extent the letters may be used for legitimate impeachment, they should not be excluded.

**Order**

This Court EXCLUDES the Coast Grain de Mexico documents, except Mr. Stellingwerf's letters which may be used for legitimate impeachment and credibility purposes if Mr. Stellingwerf testifies.

**Coast Grain Co. Balance Sheet, Dated May 31, 2003**

Mr. Braun contends that the balance sheet is irrelevant in that there are no claims which relate to the time period subject to the unverified balance sheet, a hearsay document.

Unless needed for impeachment, defendants do not oppose the motion in limine as to the balance sheet.

Since defendants point to no impeachment use of the balance sheet, it is excluded.

**Order**

This Court EXCLUDES the balance sheet.

**December 30, 2005 Fresno Bee Article Regarding Ethanol**

Mr. Braun contends that the hearsay article is irrelevant and self-serving to justify retroactively Mr. O'Brien's actions when in control of Coast Grain.

Unless needed for impeachment, defendants do not oppose the motion in limine as to the article.

The article is hearsay. Since defendants point to no impeachment use of the article, it is excluded.

**Order**

This Court EXCLUDES the article.

**MR. BRAUN'S UNOPPOSED MOTION IN LIMINE NO. 9 TO PRECLUDE ATTEMPTS TO PROVE OR DISPROVE MATTERS IRRELEVANT TO A LEGAL ISSUE IN THE PRETRIAL ORDER**

Mr. Braun seeks to exclude what he characterizes as matters irrelevant to a legal issue in the pretrial order. Mr. Braun notes that since the pretrial order supersedes the pleadings, the parties will proceed to trial on reliance that the pretrial order's Points of Law/Disputed Legal Issues are established for trial and with the pretrial's undisputed and disputed facts form the basis for jury determination. Mr. Braun notes that attempt to alter or add to the pretrial order's legal issues would be unfair, irrelevant and/or prejudicial.

Defendants do not oppose the motion in limine.

The pretrial order's Points of Law/Disputed Legal Issues reference California Corporate sections, Bankruptcy Code sections, and case citations to support Mr. Braun's claims. The Points of Law/Disputed Legal Issues reference defendants' legal contentions that ERISA and the WARN Act obligated Coast Grain to make employee retention payments and whether Mr. Braun has standing to pursue breach of fiduciary duty claims based on events pre-dating Coast Grain's bankruptcy filing.

Mr. Braun's motion in limine is vague in that he seeks to preclude "any matter that attempts to prove and/or disprove as a fact any matter which is irrelevant to an issue of law as set for[th] in the Pretrial Order." Like Mr. Braun's Motion in Limine No. 3, this motion in limine seeks a blanket order and points to no particular fact or legal issue subject to challenge. Defendants concede that the pretrial order supersedes the pleadings and is the operative "pleading" for trial, including its undisputed facts and legal issues.

**Order**

This Court PRECLUDES addition or expansion of the pretrial order's Points of Law/Disputed Legal Issues and ADMONISHES counsel that the pretrial order is the operative pleading for trial, including its undisputed facts and legal issues.

**MR. BRAUN'S MOTION IN LIMINE NO. 10 TO EXCLUDE REFERENCE TO ERISA**

Mr. Braun seeks to exclude reference to the Employee Retirement Income and Security Act

1  ("ERISA").  Mr. Braun anticipates that defendants will claim that ERISA required Mr. O'Brien to
2  authorize February 26, 2002 retention payments of $900,000 to Coast Grain employees.  As such, Mr.
3  Braun expects defendants to argue that Mr. Braun can claim no damages for the payments.

4  Mr. Braun argues that defendants have made no offer of proof in discovery responses or
5  otherwise to demonstrate ERISA relevancy or application.  Mr. Braun contends that the probative value
6  of ERISA evidence is substantially outweighed by the risk of prejudice, confusion and misleading effect
7  in that bankruptcy law required Mr. O'Brien to seek bankruptcy court approval prior to taking actions
8  "outside the ordinary course of business."  As to such bankruptcy law, Mr. Braun cites to 11 U.S.C. §
9  363(b)(1) which addresses administrative powers of trustees.

10  Defendants contend that ERISA is relevant to damages and the reasonableness of defendants'
11  actions.  Defendants note the Mr. O'Brien will testify that the retention payments at issue would
12  eliminate or reduce Coast Grain's ERISA obligations for severance pay.  Defendants argue that because
13  Coast Grain was required to make severance payments to employees who received retention payments,
14  alleged damages regarding the retention payments should be reduced by amounts which Coast Grain was
15  required to pay employees pursuant to the ERISA severance plan.

16  If a pension plan is ERISA-qualified, the plan's assets are excluded from the bankruptcy estate.
17  *In re Sterns*, 345 F.3d 1036, 1040 (9th Cir. 2003).

18  At the hearing, defense counsel acknowledged that a legal question arises whether Mr. Braun's
19  alleged damages regarding the retention payments are offset by amounts which Coast Grain was required
20  to pay employees pursuant to an ERISA severance plan.  Defendants have not provided sufficient legal
21  authority for their position regarding ERISA application to the retention payments and such issue may
22  be subject to expert opinion on which defendants have disclosed no expert.  Thus, similar to WARN Act
23  evidence, ERISA evidence must be limited to address Mr. O'Brien's actions and reasons for them and
24  otherwise comply with this Court's order on Mr. Braun's motion in limine number one.

25  **Order**

26  This Court LIMITS ERISA evidence to address Mr. O'Brien's actions and reasons for them and
27  REQUIRES such evidence to comply with this Court's order on Mr. Braun's motion in limine number
28  one.  If ERISA evidence exceeds the scope contemplated at the hearing, this Court ORDERS counsel

1  to address such evidence with the Court outside the jury's presence.
2       IT IS SO ORDERED.
3  **Dated:   February 24, 2006**           **/s/ Lawrence J. O'Neill**
   66h44d                                       UNITED STATES MAGISTRATE JUDGE